**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

KERON D. SIMPSON,

                Petitioner,        :       Case No. 3:17-cv-300

   - vs -                                District Judge Thomas M. Rose
                                           Magistrate Judge Michael R. Merz

WARDEN,
  Lebanon Correctional Institution,

                                  :

                Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits. Counsel who had represented Simpson in post-conviction filed the Petition on his behalf on August 29, 2017 (ECF No. 1) and an Amended Petition on August 31, 2017 (ECF No. 3). The Court then appointed replacement counsel (ECF No. 5) and ordered the State to file the State Court Record (ECF No. 13) and a Return of Writ (ECF No. 14). The case became ripe on the filing of Petitioner's Reply (ECF No. 18).

**Procedural History**

On January 25, 2011, the Montgomery County Grand Jury indicted Keron Simpson on one count of aggravated robbery with a firearm specification (Indictment, State Court Record, ECF No. 13, PageID 128). With the assistance of counsel, Simpson waived trial and associated rights and pleaded guilty as charged. *Id.* at PageID 140. He was sentenced to three years'

1

imprisonment for the robbery and three years consecutive for the firearm specification. *Id.* at PageID 142. Judge Tucker made the sentence consecutive to the sentence imposed in Case No. 2011 CR 1356 and also consecutive to the sentence for Count 7 and the attached specification in Case No. 2010 CR 4101/01. *Id.* Simpson appealed to the Ohio Second District Court of Appeals which affirmed the conviction and sentence. *State v. Simpson*, 2013-Ohio-1695, 2013 Ohio App. LEXIS 1584 (2nd Dist. Apr. 26, 2013)("*Simpson Direct*"). Simpson did not seek further direct appellate review from the Ohio Supreme Court.

In February 2013 Simpson filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 (State Court Record, ECF No. 13, Ex. 14, PageID 218 et seq.). The State filed a motion for summary judgment which the Common Pleas Court granted. Simpson appealed again to the Second District which again affirmed. *State v. Simpson*, 2016-Ohio-1267, 61 N.E. 3d 899, 2016 Ohio App. LEXIS 1339 (2nd Mar. 25, 2016), and further appellate jurisdiction was declined, 146 Ohio St. 3d 1490 (2016)("*Simpson PC*").

Simpson next brought this action for habeas corpus relief, pleading three claims:

> **Ground One:** Petitioner's right to counsel guaranteed by the Sixth Amendment was violated at trial.
>
> > **Sub-claim A.** Trial Counsel failed to investigate and secure an expert evaluation of Petitioner's mental health status.
> >
> > **Sub-claim B.** Trial counsel failed to investigate and obtain expert assistance on eyewitness identification and witness perception.
>
> **Ground Two:** Petitioner's right to a fair trial was violated by the admission of an unfair eye witness identification [procedure was violated].

(Corrected Petition, ECF No. 3, PageID 40, 50-51.)

# Analysis

**Ground One: Ineffective Assistance of Trial Counsel**

    **Sub-claim A. Petitioner's Mental Health Status**

In his first sub-claim of ineffective assistance of trial counsel, Petitioner asserts he received ineffective assistance when his trial attorney did not investigate his mental status and obtain an expert evaluation of that status before allowing him to plead guilty.

Simpson pleaded this claim as his first assignment of error on collateral appeal and the Second District decided it as follows:

> [*P5] In his first assignment of error, Simpson contends the trial court erred in rejecting his post-conviction claim for relief based on trial counsel's failure to have an expert review his mental status. Simpson asserts that he has an intellectual disability, namely "mental retardation," that his trial counsel failed to recognize this disability or to make any "adjustment" for it, and that counsel should have retained a mental-health expert to evaluate him. He argues that counsel's failure to do so constituted ineffective assistance. In support of his post-conviction claim about the need for an evaluation of his mental status, Simpson provided the trial court with his Dayton Public School records and Social Security Administration records. Those records show that he received low grades in school, that he participated in a special-education program, that he had a full-scale I.Q. of 53, and that he was classified as "mildly mentally retarded."
>
> [*P6] The trial court rejected Simpson's claim for post-conviction relief based on counsel's failure to have an expert review his mental status. In support of its decision, the trial court reasoned:
>
>> Keron Simpson, in support of his contention, has filed school records and medical records relating to Mr. Simpson's social security disability claim. Mr. Simpson, however, does not provide any evidence concerning what [defense counsel Jeffrey] Gramza may have known about Mr. Simpson's mental state.

> Mr. Simpson, it seems, is not contending he was not competent. Mr. Simpson, instead, asserts his low IQ affected his ability to assist counsel, and to make decisions regarding his case. The court, quite frankly, has difficulty with the suggested distinction. These issues relate to competence, yet Mr. Simpson does not suggest such incompetence.
>
> The court, in any event, has carefully reviewed the submitted documents. The documents do not demonstrate that Mr. Simpson's level of mental functioning affected his ability to assist counsel, to intelligently enter a plea, or to make decision[s] concerning his case.
>
> Mr. Simpson's contention is compromised, if not dispelled, by the Criminal Rule 11 plea procedure. Nothing occurred during the Rule 11 process that gave rise to the concerns Mr. Simpson is now asserting. The court, based upon the Rule 11 procedure, had no concerns regarding Mr. Simpson's ability to knowingly and intelligently enter a plea of guilty.
>
> Mr. Simpson, going first to the issue of ineffective assistance, has produced no evidence that Mr. Gramza knew or should have known about Mr. Simpson's low IQ. Further, there is nothing in the record to suggest how Mr. Gramza would have been alerted to this issue. The court, based upon the presented record, cannot conclude that Mr. Gramza's failure to have Mr. Simpson's mental status evaluated constituted ineffective assistance. Further the record is silent concerning how a mental status evaluation would have affected the case's outcome.
>
> Mr. Simpson, in short, has failed in his initial burden to demonstrate substantial grounds upon which it could be concluded that Mr. Gramza provided ineffective assistance by failing to have Mr. Simpson's mental status evaluated or that such an examination would have affected the course of events. It is, therefore, appropriate to dismiss this contention without a hearing through summary judgment.

(Doc. #39 at 5-6).

[*P7] We see no error in the trial court's ruling. We note a guilty plea generally "waives the right to allege ineffective assistance of

counsel, except to the extent that the errors caused the plea to be less than knowing and voluntary." *State v. Storck*, 2d Dist. Clark No. 2014-CA0130, 2015-Ohio-2880, P 9, citing *State v. Spates*, 64 Ohio St.3d 269, 1992 Ohio 130, 595 N.E.2d 351 (1992). The question, then, is whether trial counsel's failure to obtain an expert to evaluate Simpson's mental status caused his guilty plea to be less than knowing or voluntary. Simpson's post-conviction materials fail to make such a showing for several reasons.

[*P8] First, we agree with the trial court that the record below contains nothing that reasonably should have alerted defense counsel of a need to have Simpson's mental status evaluated by an expert. Simpson responded appropriately to all questions during the Crim.R. 11 plea colloquy. Among other things, he indicated that he had attended the tenth grade, that he could read and understand the plea form, and that he did not have any mental problem that would impact his ability to understand what was happening. (Plea Tr. at 5). Because nothing in the record reasonably should have caused defense counsel to question Simpson's mental status, the failure to have his mental status evaluated could not have constituted ineffective assistance.

[*P9] Second, Simpson's particular ineffective-assistance claim concerns trial counsel's failure to obtain an expert witness to evaluate his mental status. But we have no way of knowing what such an expert would have concluded, or whether such an expert would have aided his defense, because his petition for post-conviction relief is devoid of an evaluation from such an expert.

[*P10] Third, the records accompanying Simpson's petition do not themselves establish that his guilty plea was less than knowing and voluntary. It does not follow from the fact that Simpson may have a low I.Q. and suffer from "mild mental retardation" that he necessarily was incapable of entering a valid plea.

[*P11] Fourth, Simpson does not contend he was legally incompetent to stand trial. Rather, he suggests that he had an intellectual disability that, while not rendering him incompetent, affected his ability to make various decisions, including the decision to plead guilty. We note, however, that the competency standard for standing trial is no different from the competency standard for pleading guilty or waiving other constitutional rights. *Godinez v. Moran*, 509 U.S. 389, 397-398, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); *see also State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, P 57 ("The competency standard for standing trial is the same as the standard for pleading

> guilty or waiving the right to counsel."). "[W]hile the decision to plead guilty is undeniably a profound one, it is no more complicated than the sum total of decisions that a defendant may be called upon to make during the course of a trial." *Godinez* at 398. As a result, there is "no basis for demanding a higher level of competence for those defendants who choose to plead guilty." *Id.* at 399. Of course, a competent defendant's decision to plead guilty still must be knowing and voluntary. *Id.* at 400-401. But the Crim.R. 11 hearing satisfied that requirement in Simpson's case. The fact that he may have a learning disability or suffer from "mild mental retardation" does not negate the potential for a knowing and voluntary plea. For the foregoing reasons, we overrule his first assignment of error.

*Simpson PC*, 2016-Ohio-1267 at ¶¶ 5-11.

The Magistrate Judge agrees with Petitioner that this sub-claim is not procedurally defaulted. Because it necessarily depended on evidence outside the appellate record, it could not have been presented on direct appeal. Moreover, the Second District decided the claim on the merits, without purporting to invoke a res judicata bar.

On the merits, Simpson argues he was incompetent to stand trial and therefore incompetent to plead guilty. Certainly a defendant who is not competent to stand trial is also not competent to plead guilty and his or her plea cannot be considered knowing, intelligent, and voluntary, characteristics needed to make the plea constitutionally valid. *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984).

However, as the Second District found (*Simpson PC* at ¶ 11), and as in Simpson's other two habeas cases pending in this Court,[1] Simpson did not claim in his post-conviction proceedings that he was incompetent to stand trial, but merely that his intellectual disability affected his ability to participate. The Second District also found there was nothing in the record

---
[1] 3:17-cv-298, 3:17-cv-299.

which would have called the need for a mental status evaluation to trial counsel's attention. *Id.* at ¶ 8. In his Reply, Simpson points to nothing in the record to contradict these two findings.

Current counsel urges this Court to attribute the failure to directly raise the claim of involuntariness to the ineffective assistance of post-conviction counsel (Reply, ECF No. 16, PageID 1015). That would then, he says, excuse the failure to raise the claim under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). This argument fails for two reasons. First, the Sixth Circuit has not yet held that *Martinez* and *Trevino* apply in Ohio. See *McGuire v. Warden*, 738 F.3d 741, 751-52 (6th Cir. 2013); *Henness v. Bagley*, 766 F.3d 550 (6th Cir. 2014); *Moore v. Mitchell*, 848 F.3d 774 (6th Cir. 2017), cert den., 138 S.Ct. 650 (2018).

Second, *Martinez* and *Trevino* only operate to excuse procedural default in the presentation of substantial ineffective assistance of trial counsel claims. A claim that the guilty plea was involuntary is not such a claim. And the ineffective assistance of trial counsel claim for failing to seek a mental status evaluation is not substantial because, as noted above, the Second District found, and the Magistrate Judge agrees, there was nothing in the record to alert trial counsel to possible incompetence.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 99 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Here both the trial court and the Second District applied the relevant standard for ineffective assistance of trial counsel.

The governing standard for ineffective assistance of trial counsel was adopted by the

Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally*

Annotation, 26 ALR Fed 218. Both the Common Pleas Court and the Second District found that there was no deficient performance and, in addition, Simpson had not established prejudice – had not proved that with the mental status evaluation, the outcome of the proceeding would probably have been different.

In sum, the Second District's decision on this sub-claim is entitled to deference under 28 U.S.C. § 2254(d)(1) and the claim should therefore be dismissed with prejudice.

**Sub-claim B. Failure to Obtain Expert on Witness Perception, Including Eyewitness Identification**

In his second sub-claim, Simpson asserts he received ineffective assistance of trial counsel when his attorney did not obtain the services and present the testimony of an expert on eyewitness identification and other witness perception issues. This sub-claim is also not procedurally defaulted because it depends on evidence outside the record and, in any event, the Second District decided it on the merits.

Simpson presented this claim as his second assignment of error on direct appeal and the Second District decided the claim as follows:

> [*P12] In his second assignment of error, Simpson claims the trial court erred in rejecting his post-conviction claim for relief based on his trial counsel's failure to retain an eyewitness-identification expert. This assignment of error appears to address trial counsel's failure to hire an expert in conjunction with Simpson's failed motion to suppress, which challenged the eyewitness-identification process.
>
> [*P13] We reject this argument for at least two reasons. First, we do not know what such an expert would have concluded, or whether the expert would have aided Simpson's motion, because his petition for post-conviction relief is devoid of any evidence outside the record from such an expert. Therefore, Simpson cannot establish ineffective assistance based on trial counsel's failure to secure an eyewitness-identification expert to support his suppression motion. Second, the record reflects that Simpson pled

> guilty, thereby admitting his guilt and effectively negating any
> conceivable prejudice resulting from the eyewitness-identification
> issue. The second assignment of error is overruled.

*Simpson PC*, 2016-Ohio-1267 at ¶¶ 12-13. This decision is also not an objectively unreasonable application of *Strickland* in that it decides no prejudice was shown on post-conviction. Sub-claim B should be dismissed on the same basis as sub-claim A.

**Ground Two: Admission of Unconstitutional Eyewitness Identification**

In his Second Ground for Relief, Simpson asserts he was convicted in part on the basis of an eyewitness identification that was unconstitutionally unreliable. Simpson presented this claim as his fourth assignment of error on collateral review and the Second District decided it as follows:

> [*P17] In his fourth assignment of error, Simpson argues that the trial court erred in rejecting his post-conviction claim for relief based on allegedly faulty eyewitness identification. Specifically, he complains that his "right to a fair trial" was violated "by the admission of an unfair eyewitness identification procedure." (Appellant's brief at 18).
>
> [*P18] This assignment of error lacks merit for multiple reasons. First, there was neither a trial in this case nor the "admission" of any eyewitness identification. As noted above, Simpson pled guilty, waiving an appeal to the motion to suppress ruling. Second, Simpson did challenge the reliability of eyewitness identification process in a suppression motion filed prior to his plea. The issue was resolved against him, however, and in his direct appeal he did not raise that the issue should have been preserved by a no contest plea, despite being represented by different counsel in the appellate proceeding. Because Simpson's post-conviction relief petition presented no evidence outside the record to support his eyewitness-identification challenge, res judicata applies. Third, the record reflects that Simpson pled guilty, thereby admitting his guilt. The fourth assignment of error is overruled.

*Simpson PC*, 2016-Ohio-1267 at ¶¶ 17-18.

Analyzing that decision, the Magistrate Judge finds first that the claim was procedurally defaulted when Simpson pled guilty and thereby waived direct appellate review of the claim which could have been maintained by a no contest plea. If it were to be contended that this was ineffective assistance of trial counsel, that claim has never been raised in the state courts. If it were further contended that it was ineffective assistance of appellate counsel not to raise this claim on direct appeal, as a method of excusing the default, then that claim is also procedurally defaulted because it would have to have been presented first to the state courts. *Edwards v. Carpenter*, 529 U.S. 446 (2000).

Second, because the claim could have been raised on direct appeal and was not, the Second District enforced the Ohio criminal res judicata rule against Simpson. Ohio's doctrine of res judicata in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Because Ground Two is procedurally defaulted, it should be dismissed with prejudice without reaching the merits.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the

Petition be DISMISSED WITH PREJUDICE. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 14, 2018.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).